IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARIA G. HOLGUIN,

    Plaintiff,

v.                                                        CV 08-864 CEG

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    Maria G. Holguin ("Ms. Holguin" or "Plaintiff") brought this action seeking judicial review of the denial of her claim for Title XVI Supplemental Security Income ("SSI"). This matter is before me now on Ms. Holguin's "Motion to Reverse or Remand Administrative Agency Decision." See docket no. 13. Because the Commissioner's decision was reached by applying an incorrect legal standard at step five, I find Plaintiff's motion should be granted and the case be remanded to the Commissioner for further proceedings.

**Standard of Review**

    In reviewing the agency's decision, the Court must "'determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.'" Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (quoting Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotations omitted). "[A] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Id. (internal quotation omitted). The Court must meticulously examine the record to determine

whether substantial evidence supports the Administrative Law Judge's ("ALJ") decision.  Id.  In conducting such an examination, the Court must take into account anything in the record that "fairly detracts" from the evidence supporting the ALJ's decision.  Id.  Moreover, "[t]he agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal."  Id.

## The Sequential Evaluation Process

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423 (d)(1)(A)).  The Social Security Administration employs a "five-step sequential evaluation process to determine disability."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  At step one of the process, the claimant must show that he is not working at a substantial gainful activity.  See 20 C.F.R. §§ 404.1520(b) and 416.920(b).  At step two, the claimant must show that he has an impairment, or combination of impairments, that are severe enough to significantly limit his ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c) and 416.920(c).  At step three, it is the claimant's burden to show that the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement, the claimant is disabled.  If it does not, the analysis proceeds to the next step.  At step four, the ALJ must determine the claimant's residual functional capacity ("RFC") and consider, in light of this RFC, whether the claimant retains the ability to perform past relevant work.  See 20 C.F.R. §§ 404.1520(e) and 416.920(e).

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. See id.; 20 C.F.R. § 404.1545.

The claimant bears the burden of proof throughout the first four steps of the sequential evaluation process. At step five, however, the "burden shifts to the Secretary to show that the claimant retains the RFC to do other work that exists in the national economy." Thompson, 987 F.2d at 1487. "How the ALJ should proceed on step five to make the ultimate determination that the claimant is disabled or not depends on whether the claimant alleges an exertional impairment (strength-related), or non-exertional impairment (pain or mental problems), or both." Id.

## Background

On April 14, 2004, Plaintiff protectively filed an application for SSI benefits. See Administrative Record ("AR") at 14 and 50B-50F. In her application, Ms. Holguin alleged disability beginning May 1, 2002. Id. The claims were denied initially on July 26, 2004, and upon reconsideration on November 10, 2004. Id. at 42-44 and 47-50. After the adverse decisions by the Commissioner of Social Security, Plaintiff requested and was granted a hearing before an ALJ. Id. at 37-38. On December 13, 2005, Ms. Holguin appeared, with a non-attorney representative, before ALJ Mark R. Dawson. Id. at 897-913. At the hearing, the ALJ took testimony from Ms. Holguin, who was 48 years old at the time. Id. On August 16, 2006, the ALJ issued an unfavorable decision denying Ms. Holguin's claim. Id. at 14-24. On November 21, 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's August 16, 2006 decision the Commissioner's final decision. Id. at 4-6.

In the Commissioner's final decision, the ALJ first stated the issue was whether Ms. Holguin was disabled under § 1614(a)(3)(A) of the Social Security Act. See id. at 14. The ALJ then moved on to step one of the sequential evaluation process and found Ms. Holguin had not

engaged in substantial gainful activity since May 1, 2002, the alleged onset date. Id. at 16 (citing 20 C.F.R. §§ 416.920(b) and 416.971 et seq.). The ALJ indicated at step two that Ms. Holguin suffered from the following severe impairments: exogenous obesity, with a weight range of 218 to 231 pounds on a 63-inch frame, for a Body Mass Index of 38.6 to 40.9; stress urinary incontinence, status post sling repair (SPARC procedure) on November 19, 2002; bilateral carpal tunnel syndrome; non-insulin dependent diabetes mellitus; and, degenerative joint disease of the left knee, status post arthroscopic repair on March 3, 2003. Id. (citing 20 C.F.R. § 416.920(c)). Additionally, the ALJ found Ms. Holguin suffered from the following non-severe impairments: depression and anxiety. Id. (citing 20 C.F.R. §§ 404.1521 and 416.921). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 18-21.

At step four, the ALJ determined that Ms. Holguin had the RFC to perform: the mental demands of unskilled work activity, including maintaining concentration, persistence and pace necessary to understand, carry out, and remember simple instructions on a consistent basis, use judgment for this type of work, respond appropriately to supervision, co-workers and usual work situations, and deal with changes in the a routine work setting. Id. at 21-22. The ALJ further found Ms. Holguin was limited to lifting and carrying no more than ten pounds, could stand and walk for no more than two hours in an eight hour workday, and could sit for no more than six hours in an eight hour workday. Id. The ALJ indicated that Plaintiff had no past relevant work. Id. at 23 (citing 20 C.F.R. § 416.965). Therefore, the ALJ went on to conduct step five findings. Id. at 23-24. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national

economy that Plaintiff could perform.  Id. (citing 20 C.F.R. §§ 416.960(c) and 416.966).

Specifically, the ALJ found that a finding of "not disabled" was directed by Medical-Vocational Rule 201.18 and, implicitly, that vocational expert testimony was not needed because, although Plaintiff could not perform a full range of sedentary work, Ms. Holguin's additional limitations had little or no effect on the occupational base of unskilled sedentary work.  See id. at 24.  Ultimately, the ALJ found Plaintiff was not under a disability as defined by the Social Security Act since April 14, 2004, the date the application was filed.  Id. (citing 20 C.F.R. §§ 416.920(g)).

On September 23, 2008, Ms. Holguin filed an appeal in this Court.  See docket no. 1.  In her Memorandum in Support of the Motion to Reverse or Remand Administrative Agency Decision, she alleges the administrative decision contains multiple errors.  See docket no. 14.  Specifically, Ms. Holguin argues: (i) the ALJ committed legal error at step five and misapplied the Medical-Vocational Guidelines to determine that Ms. Holguin was not disabled; and (ii) the ALJ committed legal error by failing to support his adverse credibility ruling, which was unsupported by substantial medical evidence of record.  Id. at 6-18.  On May 28, 2009, the Commissioner filed a response to Ms. Holguin's motion, arguing the ALJ applied the correct legal standards and his decision is supported by substantial evidence.  See docket no. 15.  On August 12, 2009, Plaintiff filed a reply to Defendant's response.  See docket no. 18.

## Analysis

### Application of the Medical-Vocational Guidelines

Plaintiff contends the ALJ reached his ultimate conclusion of non-disability for Ms. Holguin by conclusively applying the Medical-Vocational Guidelines listed in 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids").  Ms. Holguin argues the ALJ erred in relying exclusively on the Grids because the finding assumes that Plaintiff suffered from only exertional

limitations.  Plaintiff asserts that "[g]iven the state of the record, this was clear legal error where substantial evidence exists to show that [Ms. Holguin's] bilateral carpal tunnel syndrome was both an exertional and non-exertional impairment."  The Court will address this argument exclusively as it is relevant to the remand.

The Grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience.  See Thompson, 987 F.2d at 1487 (citations omitted).  Under the Secretary's regulations, however, the Grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule.  See id.  A mismatch may occur because of a particular exertional or non-exertional impairment, or a particular combination of impairments.  See id.  An ALJ may not rely conclusively on the Grids unless he finds (1) that the claimant has no significant non-exertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level.  See id. at 1488.  Further, each of these findings must be supported by substantial evidence.  See id.

The ALJ found Ms. Holguin suffered from five severe impairments, including bilateral carpal tunnel syndrome.  See AR at 16.  Providing insight as to why the ALJ characterized Ms. Holguin's hand problems as severe, the medical evidence in this case indicates Plaintiff sought treatment for bilateral hand numbness and weakness secondary to bilateral carpal tunnel syndrome.  See id. at 131, 612, 618, 627, 694-95, 723, and 901-903.  Objective testing established that Ms. Holguin had bilateral sensory nerve delays secondary to carpal tunnel, which caused her to suffer hand numbness and loss of sensation and feeling.  See id. at 694.  The medical evidence documents instances where Ms. Holguin had limitations in handling, feeling, and grasping objects due to neurological deficiencies in both hands.  See id. at 131, 612, 618,

627, 694-95, 723, and 901-903.  Any limitations in a claimant's ability to handle, feel, or use her fingers are regarded as "Nonexertional Limitations and Restrictions under Social Security Ruling ("SSR") 96-9p.  SSR 96-9p states that a non-exertional limitation is an impairment-caused limitation "affecting such capacities as . . . reaching, handling, fingering, and feeling" and that "most unskilled sedentary jobs require good use of hands and fingers for repetitive hand-finger actions."  SSR 96-9p.

      Additionally, the ALJ determined Ms. Holguin had the RFC to perform: the mental demands of unskilled work activity, including maintaining concentration, persistence and pace necessary to understand, carry out, and remember simple instructions on a consistent basis, use judgment for this type of work, respond appropriately to supervision, co-workers and usual work situations, and deal with changes in the a routine work setting.  See AR at 21-22.  The ALJ further found, with respect to Ms. Holguin's RFC, that she was limited to lifting and carrying no more than ten pounds, could stand and walk for no more than two hours in an eight hour workday, and could sit for no more than six hours in an eight hour workday.  Id.  The ALJ therefore found Plaintiff possessed the RFC to perform an undefined range of unskilled, sedentary work and the Court notes that work at the sedentary level involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See id. at 24; Thompson, 987 F.2d at 1488.

      In applying the Thompson three-prong test, the Court finds the ALJ did not expressly find that Ms. Holguin suffered "no significant non-exertional impairments."  This alone may have been error given the evidence that Plaintiff's bilateral carpal tunnel syndrome resulted in hand numbness and loss of sensation that probably limited Ms. Holguin's ability to handle and feel objects.  As for the second prong, the ALJ also did not make an express finding that Plaintiff

could "do all the full range of work at some RFC level on a daily basis."  The Court finds the ALJ's limitation to only unskilled sedentary jobs does not mean the same thing as a "full range of work" where the full range of work also encompasses skilled and semi-skilled sedentary jobs.  Finally, with respect to the third Thompson prong, the ALJ did not expressly find whether Plaintiff could perform most jobs within the sedentary range of work.  In fact, the ALJ found that Plaintiff was only capable of performing unskilled sedentary occupations.  However, "[a]ny significant manipulative limitation of an individual's ability to handle . . . with both hands will result in a significant erosion of the unskilled sedentary occupational base."  SSR 96-9p.  The Court acknowledges the Commissioner's argument that Plaintiff did not seek an evaluation from a hand surgeon, but ultimately finds the ALJ should have called a vocational expert to determine what limitation Ms. Holguin's severe bilateral carpal tunnel syndrome might impose on her capacity to do sedentary work.

In the case of a claimant who suffers from non-exertional impairments, or a combination of exertional and non-exertional impairments, that prevent her from performing most of the jobs at a particular exertional level, like this one, the Grids may be used only as a guide or framework, and the Commissioner must prove through expert vocational testimony that jobs exist in the national economy which the claimant can perform.  See Ramirez v. Astrue, 255 Fed. Appx. 327, 330 (citing Thompson, 987 F.2d at 1488, 1491-92; Channel v. Heckler; 747 F.2d 577, 579-83 (10th Cir. 1984); 20 C.F.R. §§ 404.1569a and 416.969a; and 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00).  The ALJ's decision to apply the Grids without any vocational expert testimony was legal error, especially in light of the ALJ's finding that Plaintiff suffered from "severe" bilateral carpel tunnel syndrome with medical evidence demonstrating both exertional and non-exertional limitations.  As such, the case should be remanded for further

proceedings, including a supplemental hearing with vocational expert testimony on the impact of Ms. Holguin's impairments on her ability to work within the RFC. Given this finding, the Court finds the remainder of Plaintiff's arguments to be moot.

## Conclusion

For the reasons set forth above, Ms. Holguin's Motion to Reverse and Remand for a Rehearing (docket no. 13) is **GRANTED**. The case is remanded for proceedings consistent with this Memorandum Opinion and Order.

**IT IS SO ORDERED**.

_____
UNITED STATES MAGISTRATE JUDGE